THE LANCASHIRE INSURANCE COMPANY AND OTHERS, RESPONDENTS, *v.* ROBERT. A. MAXWELL, SUPERINTENDENT OF THE INSURANCE DEPARTMENT OF THE STATE OF NEW YORK, APPELLANT, IMPLEADED, ETC.

*Foreign insurance company — deposit of bonds with the insurance department in excess of the $200,000 required by law — the excess is held upon the same trust as the $200,000 — the company is not entitled to its return.*

A foreign insurance company began business in the State of New York in 1872, and, pursuant to section 23, chapter 466, Laws of 1853, as amended, it deposited, as a condition of being allowed to do business in that State, with the Superintendent of the Insurance Department thereof, $200,000   It thereafter also deposited with him from time to time further sums, amounting to $579,500, "for the further benefit and security of their policyholders in the United States."

It is provided by section 2, chapter 388, Laws of 1871, that the capital stock of a foreign insurance company shall "be the aggregate value of such sums or securities as such company shall have deposited in the insurance and other departments of this State, and of the other States of the United States," and all bonds and mortgages taken pursuant to law, provided such bonds, mortgages, assets and property shall be held in the United States by trustees, citizens of the United States, approved by the insurance superintendent of this State, for the general benefit of all the policyholders and creditors of the company.

In 1886 a corporation executed a trust deed, in alleged conformity to the last-above cited statute, to certain parties, who demanded of said superintendent the securities in excess of two hundred thousand dollars, which demand was refused.

Upon the hearing of a demurrer interposed to a complaint, stating, in substance, the foregoing facts, in an action brought by the corporations and such trustees to recover such excess:

*Held,* that the action could not be maintained.

That the Superintendent of the Insurance Department received said securities, in excess of two hundred thousand dollars, in his official character, "for the benefit and security of policyholders residing in the United States," and upon the same trust as that described in the said act of 1853, as amended.

That he was in no sense a voluntary trustee of such excess.

That the language of the act of 1853, as amended, requiring the deposit of "a sum . not less than $200,000," indicated that such a deposit might exceed said sum.

That both funds were held by the superintendent, by force of said statute, and that there was no ground for any distinction which would hold that the $200,000 was held by the superintendent officially, and that the excess was held by him as a private trustee.

APPEAL by the defendant Robert A. Maxwell, as Superintendent of the Insurance Department of the State of New York, from an

order or judgment, entered in the office of the clerk of the city and county of New York on the 22d day of January, 1890, upon an order overruling a demurrer of the defendant to the plaintiffs complaint.

The Lancashire Insurance Company, of Manchester, England, was duly incorporated under the laws of Great Britain. The plaintiffs, other than it, are Cornelius N. Bliss, Horace J. Fairchild and Donald Mackey, to whom said company executed a deed of trust, bearing date October 28, 1886, which deed was executed in supposed compliance with section 2 of chapter 888, Laws of 1871, relative to trustees who are to hold the assets of a foreign insurance company doing business in the United States. The persons named were citizens of the United States. By section 2 of the last-mentioned act, it is provided that the capital stock of a foreign insurance company shall " be the aggregate value of such sums or securities as such company shall have deposited in the insurance and other departments of this State, and of the other States of the United States," and all bonds and mortgages taken pursuant to law, provided such bonds, mortgages, assets and property shall be held in the United States by trustees, citizens of the United States, approved by the insurance superintendent of this State, for the general benefit of all the policyholders and creditors of the company. The total of the securities on deposit with the Superintendent of the Insurance Department, at the time of the commencement of this action, June 30, 1888, was the sum of $779,500, $200,000 of which was deposited when, in 1872, the company began business in this State. The complaint alleged that the trustees under said trust deed of October 28, 1886, demanded and requested the said superintendent to assign and deliver to them said bonds, less $200,000 thereof, of such character as he might select, and that he declined to do so.

Chapter 466, Laws of 1853, is the general act relating to fire insurance companies. Section 23 thereof required an agent of a foreign insurance company to furnish evidence satisfactory to the comptroller that such company had invested in securities, approved by law in this State, an amount equal to the capital required by section 6 of said act from companies organized under said act; also evidence that " such securities and investments are held in trust by,

citizens of the United States for the benefit and security of such as may effect insurance with him or them." Section 6 of said act required a State company organized in New York county to have a capital of $150,000.

The State Insurance Department was organized by chapter 366, Laws of 1859; and the superintendent was substituted for the comptroller as to all existing laws.

Section 23, chapter 466, Laws of 1853, was amended by chapter 367, Laws of 1862, in such wise that the capital required by section 6 of the former act for a New York county company was increased by the latter act from $150,000 to $200,000, and a foreign insurance company was required to deposit with the Superintendent of the Insurance Department, "for the benefit and security of policy-holders residing in the United States, a sum not less than $200,000."

It was under this latter provision that the superintendent held the securities in dispute.

Section 23, chapter 466, Laws of 1853, was further amended by chapter 555, Laws of 1875; but this amendment did not alter the terms and conditions upon which such deposits are to be held by the said superintendent, nor their amount.

*Isaac H. Maynard*, for the appellant.

*George De Forest Lord*, for the respondents.

BARTLETT, J. :

This action cannot be maintained without holding that, when the Superintendent of the Insurance Department receives securities from a foreign fire insurance company in excess of the $200,000 prescribed by the act of 1853 (Laws of 1853, chap. 466, § 23 ; 2 Birdseye Statutes, p. 1639), he takes them as a voluntary trustee, and not in his public or official character. "As to the surplus of the funds held by the defendant Maxwell, over $200,000," says the learned counsel for the respondents, "he is a mere voluntary trustee ; " and the court below adopted this view, declaring the excess to be a mere voluntary deposit, as to which the superintendent did not stand in the attitude of a trustee appointed by the statute, with the exclusive right to be continued as such. The fund in the hands of the superintendent was treated as being divisible into two parts : One, consisting of securities to the amount of $200,000, which he holds as a

statutory trustee under the act of 1853 ; and the other made up of the additional securities deposited with him by the Lancashire Insurance Company, which he holds as a private trustee, and not in pursuance of any duty devolved upon him by law.

It does not seem to me that this construction of the statute is correct.    The act of 1853 (§ 23, as amended by chap. 367 of 1862), requires a foreign fire insurance company doing business in this State to "deposit with the Superintendent of the Insurance Department, for the benefit and security of policyholders residing in the United States, a sum not less than $200,000 in stocks of the United States or of the State of New York, in all cases to be, or to be made to be, equal to a stock producing six per cent per annum." The act does not say precisely $200,000, or not more than $200,000, but *not less than $200,000*. The company must deposit as much as that, and may deposit a great deal more, as the Lancashire Insurance Company has done.    But I find no warrant in the language of the law itself for distinguishing between the trust upon which the Superintendent of the Insurance Department holds the first $200,000 which he receives and the trust upon which he holds the rest.    The deposit is to be made for the benefit and security of policyholders residing in the United States.    The complaint in this case alleges that the first sum of $200,000 was so deposited for the benefit and security of such policyholders, and then proceeds to say that the company, "from time to time, deposited other stocks of the United States with the successive Superintendents of the Insurance Department of said State, to be held by them, and their respective successors in office, *for the further benefit and security of their policyholders in the United States.*" This is the precise trust contemplated by the act of 1853, and the aggregate securities constitute the sum not less than two hundred thousand dollars, of which the superintendent is the statutory trustee.

In order to make him an unofficial trustee of a voluntary trust, so far as the securities in excess of $200,000 are concerned, it is necessary to ignore the true nature of the transactions between the Lancashire Insurance Company and the various superintendents of insurance.    The plain import of the allegations in the complaint is that the so-called additional securities were turned over to the respective superintendents as public officers, and received and accepted by them

as such. There was nothing private or personal about the deposit. If there had been, and a mere voluntary trust had been contemplated, non-official in its character, the securities would have been taken and held by each recipient as an individual trustee, and not in his public capacity at all, and he would have retained the securities after he went out of office instead of turning them over to his successor. The idea of the divisibility of the fund, and of a voluntary trust, as to the so-called surplus, does not appear ever to have been suggested until it became important to the Lancashire Insurance Company to withdraw a portion of the securities from the custody of the superintendent; but however desirable or unobjectionable such withdrawal may be, no consideration of convenience should blind us to the true nature of the deposit. The circumstances under which the securities were put into the hands of the superintendents, as disclosed by the complaint, leave no doubt in my mind that the only trust in contemplation between the parties at any time was the statutory trust provided for in the act of 1853. The head of the insurance department became and continued and remains officially responsible for the safe-keeping and proper management of the whole fund, and not merely for the $200,000 first paid in, as would be the case if the respondents were correct in their contention that the trust is purely voluntary as to the balance. If it is voluntary, it cannot be in any sense official, for the assumption of a voluntary trust in this matter by the Superintendent of the Insurance Department is not authorized by law.

The case of *Ruggles* v. *Chapman* (59 N. Y., 163; 64 id., 557), and the *Matter of the Guardian Mutual Life Insurance Company* (13 Hun, 115), are authorities for the proposition, which is well stated in the opinion of the learned judge at Special Term, " that the court has no power to interfere with the possession or administration of securities or funds in the hands of a statutory trustee for possession and administration (the question of misconduct being eliminated), because the trusteeship is made and governed exclusively by the terms of the statute itself." Having reached the conclusion that the Superintendent of the Insurance Department is an official trustee as to the entire fund deposited by the Lancashire Insurance Company, it follows that he cannot be deprived of the custody or control of any part of it, on any of the grounds set out

in the complaint; and hence that the complaint does not state facts sufficient to constitute a cause of action.

For these reasons, I think the judgment should be reversed.

VAN BRUNT, P. J., concurred.

BARRETT, J.:

I concur. The judgment should be reversed, with costs, and the demurrer sustained, with costs of the Special Term and of this appeal.

Judgment reversed, with costs, and the demurrer sustained, with costs of the Special Term and of this appeal.